COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-191-CR

NO. 2-06-192-CR

LARRY T. FORD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  
Introduction

A jury convicted Appellant Larry T. Ford (“Ford”) of aggravated robbery with a deadly weapon and evading arrest or detention using a vehicle.  The jury sentenced Ford to sixty years’ confinement for the aggravated robbery offense and two years’ confinement for the evading arrest offense.  Counsel on appeal has filed an 
Anders
(footnote: 2) 
brief asserting that there are no grounds that would be arguably successful on appeal.  Ford has filed a pro se brief raising a single point.  We grant counsel’s motion to withdraw, overrule Ford’s sole point, and affirm the trial court’s judgment.

II.  
Factual Background

On July 29, 2005, Bethany Baker and her son and Ethel Jones and her son and daughter returned to Baker’s residence late in the evening in Baker’s 1991 minivan.  As Baker helped her son out of the vehicle, an individual later identified as Ford approached Baker, pointed a gun at her, and told her that he would shoot her son if she did not give him her money and car keys.  Ford also demanded that Jones give him her money and threatened to shoot Jones’s daughter.  Baker gave Ford the keys to the vehicle, her cell phone, and her money, and Jones gave him her money.  Ford drove off in Baker’s minivan, and Baker called the police, who arrived approximately ten minutes later and put out a broadcast about the stolen vehicle.

The police subsequently located the stolen vehicle, but the driver refused to stop; a chase ensued.  During the chase, a police officer observed the driver throw a gun out of the window.  Officers subsequently deployed spike strips, which punctured the vehicle’s tires and caused it to crash into a curb and come to a stop.  Police officers detained the driver, whom Baker and Jones identified at the scene as Ford.  Baker also identified the crashed vehicle as hers, and officers located the gun that Ford threw out of the minivan during the chase. At trial, Baker identified the gun retrieved by officers from the side of the road as the same one used by Ford during the robbery.  Baker also identified Jones as the individual who robbed her.  She testified that she was afraid that Ford was going to kill her and her son, and Jones testified that she was afraid that Ford was going to kill her or her daughter.  A firearms expert with the Fort Worth Police Department testified that the gun, a .357 Llama, was a functioning weapon and a deadly weapon.  A police officer also testified that he was following the stolen vehicle because it had been reported stolen, that he was trying to lawfully detain the person driving the car, that he was in a marked patrol car with the overhead lights and siren on at the time, and that he thought it would be obvious to a reasonable person that he was trying to stop the vehicle.

III.  The 
Anders 
Brief

Ford’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in her professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders
 by presenting a professional evaluation of the record and explaining why there are no arguable grounds for appeal.  
See Mays v. State
, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).  The State filed a short letter brief addressing Ford’s single point.

Once Ford’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we are obligated to undertake an independent examination of the record and to essentially rebrief the case for appellant to see if there is any arguable ground that may be raised on his behalf.  
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).  We address Ford’s argument first.

IV.  Ford’s Pro Se Brief

In a single point, Ford argues that his counsel was ineffective for failing to make a 
Batson
(footnote: 3) 
challenge.  He contends that he “is a member of the same race as the eleven excluded veniremen” and that his counsel “intentionally eliminated all the black members” of the panel
.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that 
his
 counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Id
. (quoting 
Thompson
, 9 S.W.3d at 813).

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

Here, we have reviewed the record, including the entire voir dire proceedings.  The record demonstrates that Ford’s counsel conducted a thorough voir dire in which he attempted to determine bias on the part of the venire members.  At the conclusion of the voir dire, Ford’s counsel and the State each lodged multiple challenges for cause, some of which were agreed to and some of which the trial court granted.  The record, however, does not indicate who the State peremptorily challenged or if it used any peremptory challenges at all.  More importantly, the record fails to show the race of the members of the venire panel, the race of the jurors peremptorily challenged by the State and Ford’s counsel, if any, and the race of the jurors selected to serve on the panel.  
Because the appellate record does not reveal the race of the venire members that the State struck from the panel, we cannot determine whether counsel was ineffective by allegedly failing to lodge a 
Batson 
challenge.  
See Hall v. State
, 862 S.W.2d 710, 715 (Tex. App.—Beaumont 1993, no pet.); 
Walker v. State
, Nos. 05-91-00167-CR to 05-91-00174-CR, 1992 WL 52379, at *3 (Tex. App.—Dallas Mar. 20, 1992, no pet.) (not designated for publication).  For the same reason, we cannot determine whether counsel was ineffective for allegedly intentionally eliminating “all the black members” of the panel, as Ford argues.  Accordingly, we overrule Ford’s sole point.

V.  
Independent Review

A.  
Jurisdiction And Voir Dire

The indictment tracks the statutory language of the offenses for which Ford was convicted.  
See 
Tex. Penal Code Ann.
 §§ 29.03(a)(2), 38.04(b)(1) (Vernon 2003).  The indictment further conferred jurisdiction on the trial court and provided Ford with sufficient notice to prepare a defense.  
See 
Tex. Const.
 Art. V, § 12; 
Duron v. State
, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).  Regarding voir dire, we have already mentioned above that Ford’s counsel conducted an extensive voir dire and that the trial court granted a number of Ford’s challenges for cause.  The trial court also did not prohibit Ford’s counsel from asking proper questions of the venire panel.  Our review of the record thus reveals no jurisdictional defects or reversible error occurring during voir dire.

B.  
Sufficiency Of The Evidence

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  
When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Here, considering the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support Ford’s conviction for aggravated robbery with a deadly weapon and evading arrest or detention using a vehicle.  
See Jackson
, 
443 U.S. at 319, 99 S. Ct. at 2789; 
Watson
, 204 S.W.3d at 414.

C.  Effective Assistance Of Counsel

The record demonstrates that Ford’s trial counsel filed numerous pretrial motions, that he sufficiently cross-examined the State’s witnesses during trial, that he took several of the State’s witnesses on voir dire to investigate their testimony regarding certain evidence proffered by the State, and that he made an arguably persuasive closing argument at the end of the trial.  The record further reveals that Ford’s counsel managed to negotiate with the State a plea-bargain agreement for a twenty-year sentence but that Ford ultimately rejected the State’s offer.  Considered in light of the standard of review set forth above where we addressed Ford’s ineffective assistance argument, our review of the entire record fails to reveal that counsel was ineffective.  
See Strickland
, 466 U.S. at 687-89, 104 S. Ct. at 2064.

D.  Jury Charge

The trial court’s charge at the guilt-innocence phase of the trial properly defined the law and properly applied the law to the facts of the case.  
See 
Tex. Code Crim. Proc. Ann.
 Art. 36.16 (Vernon 2006).  The jury charges at both the guilt-innocence and punishment stages of the trial do not contain reversible error.

E.  Punishment And Sentencing

At the punishment phase of the trial, the jury heard evidence that Ford robbed an individual while using a firearm just four days before the instant offense, taking the victim’s laptop computer, cell phone, and keys.  The laptop was pawned by an acquaintance of Ford shortly thereafter.  There was also testimony that Ford had been unsuccessfully discharged from parole by the Texas Youth Commission, and Ford pleaded true to a repeat offender enhancement.

The punishment of sixty years’ confinement assessed by the jury for Ford’s aggravated robbery with a deadly weapon conviction is within the punishment range provided for by law.
  
See
 
Tex. Penal Code Ann.
 § 29.03(b) (providing that aggravated robbery is a felony of the first degree), § 12.32 (providing that a person adjudged guilty of a first degree felony shall be punished by imprisonment for life or for any term of not more than ninety-nine years or less than five years).  The punishment of two years’ confinement assessed by the jury for Ford’s 
evading arrest or detention using a vehicle
 conviction is also within the punishment range provided for by law.  
See id
. § 38.04(b)(1) (providing that evading arrest or detention is a state jail felony if the actor uses a vehicle while in flight and has not been previously convicted under this section), § 12.35(a) (Vernon Supp. 2007) (providing that an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days).  Our review of the record reveals no reversible error from the punishment phase.

VI.  Conclusion

Based upon our independent review of the record, we have determined that there is no error on which an appeal could be based or which would require reversal of this case.  Therefore, we grant appellate counsel’s motion to withdraw, overrule Ford’s point, and affirm the trial court’s judgment.

PER CURIAM

PANEL F:  HOLMAN, LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b) 

DELIVERED:  November 15, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).

3:
Batson v. Kentucky
, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986).